[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 558.]

THE STATE OF OHIO, APPELLANT, *v*. CHILDS, APPELLEE.

[Cite as *State v. Childs*, 2000-Ohio-425.]

*Criminal law—Conspiracy charge need not include the specific controlled substance involved in the underlying offense—Party seeking to suppress evidence allegedly obtained in violation of R.C. 2933.52(A)(1) bears the burden of proof on that issue.*

1.      A conspiracy charge need not include the specific controlled substance involved in the underlying offense.

2.      The party seeking to suppress evidence allegedly obtained in violation of R.C. 2933.52(A)(1) bears the burden of proof on that issue.

(No. 99-12—Submitted February 8, 2000—Decided May 31, 2000.)

APPEAL from the Court of Appeals for Montgomery County, No. 16580.

————————————

{¶ 1} In 1995, Dayton police officer, Dineah Childs, was indicted for participating in various drug trafficking offenses. Also indicted were her husband Charles Childs, William Bailey (both police officers), and her cousin Sean Pauley. According to the testimony at trial, defendant and her codefendants conspired on several occasions to steal drugs from dealers and to resell the drugs on the street. During a search of Charles's desk at work, police discovered a series of audiotapes that implicated Childs as a participant in the drug trafficking offenses.

{¶ 2} The audiotapes, which spanned a forty-day period, were recorded by Charles with a voice-activated recorder attached to a phone in Childs's home. Childs was a party to most of these conversations and it is upon this evidence that the counts against her are based. Following is a summary of the relevant portions:

{¶ 3} State's Exhibit 23 is a recording of a conversation between Childs and Charles, during which Charles asked Childs if Pauley wanted to buy any drugs.

Charles stated that he had marijuana he was trying to get rid of and told Childs to ask Pauley for the price of an ounce.

{¶ 4} State's Exhibit 25 contains a conversation between Childs and Pauley in which Childs assured Pauley that Charles was obtaining more drugs. In State's Exhibit 27, Childs told Pauley that all Charles had was "powder," meaning cocaine, but that he was looking for something else.

{¶ 5} In the conversation recorded in State's Exhibit 33, Pauley instructed Childs to tell Charles that he wanted his next order of drugs to be "uncut," a drug term referring to the pure form of a drug, but otherwise wanted to carry out the deal in the usual manner.

{¶ 6} State's Exhibit 37, which essentially encompasses Count 15, contains two conversations between Childs and Pauley. In the second, Pauley told Childs to tell Charles that he wanted "four," to which Childs added that he meant four ounces. Pauley then began discussing prices and stated that Charles would sell the drugs to him for $680 an ounce and, in order to make a profit, Pauley would raise it to $750.

{¶ 7} State's Exhibit 41, which supports Count 14, contains several conversations. The first was between Childs and Charles, with Pauley's voice audible in the background. Childs asked Charles if he had anything for Pauley. Charles questioned Pauley's ability to pay, which Childs confirmed. Charles then instructed her to go upstairs and see what he had, telling her there should be "a thousand or right around 14 hundred, something like that." Childs did so, confirmed the amount, and then assured Charles that he would get his money. The conversation was interrupted by an unrelated call, but when Childs called Charles back, she told him that for this deal Pauley wanted to "work it," meaning purchase it on credit. Charles agreed to those terms.

{¶ 8} Based upon this and the remaining evidence presented at trial, Childs was convicted of one count of engaging in a pattern of corrupt activity (Count 1) and three counts of conspiracy in violation R.C. 2923.01: conspiracy to commit a

2

pattern of corrupt activity under R.C. 2923.32(A)(1) (Count 2), conspiracy to commit aggravated trafficking under former R.C. 2925.03(A)(2) (Count 14), and conspiracy to commit aggravated trafficking under former R.C. 2925.03(A)(7) (Count 15). The appellate court reversed the conviction on Count 1 as being against the manifest weight of the evidence and as based upon insufficient evidence. Count 1 is not at issue in this appeal.

{¶ 9} The court also ruled that Counts 2, 14, and 15 were multiplicitous and therefore merged into one; that Count 14 was fatally defective and the conviction was reversed and remanded for a new trial; and that the conviction on Count 2 was reversed as not being supported by sufficient evidence. Finally, the court reversed and remanded the conviction on Count 15 for a determination of whether Childs consented to the recording of the audiotapes in order to assess their admissibility. The state now appeals the reversal of the convictions on Counts 2, 14, and 15.

{¶ 10} The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, and *Lynda K. Ashbery,* Assistant Prosecuting Attorney, for appellant.

*Charles A. Smiley, Jr.,* for appellee.

_____

**COOK, J.**

{¶ 11} At issue in this appeal is whether the appellate court properly reversed the convictions against Dineah Childs on the grounds of multiplicity of convictions, defectiveness of the indictment, and inadmissibility of the supporting evidence. For the reasons set forth below, we affirm the appellate court's decision as to Count 2, but reverse its disposition of Counts 14 and 15.

3

I. Multiplicity

{¶ 12} In its first proposition of law, the state urges us to reverse the appellate court's merger of Counts 2, 14, and 15. Arguing that each count related to a distinct conspiratorial agreement, the state contends that neither federal law, R.C. 2941.25(A), nor 2923.01(F) requires these counts to be merged. Childs responds that these counts related to a single conspiratorial agreement and are therefore multiplicitous.

{¶ 13} In resolving this issue, we are mindful of the constitutional concern underlying multiplicity. It has been said that the vice of a multiplicitous indictment lies in the possibility of multiple punishments for a single offense in violation of the cumulative punishment branch of the Double Jeopardy Clause of the Fifth Amendment. See 1A Wright, Federal Practice & Procedure, Crim.3d (1999) 17, Section 142.

{¶ 14} The Double Jeopardy Clause is not violated, however, where the legislature has evinced an intent to permit multiple punishments for a single offense. Thus, "[t]he real question is one of legislative intent, to be ascertained from all the data available." *Id.* at 17-20, Section 142. As the United States Supreme Court has clarified, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter* (1983), 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542.

{¶ 15} Our inquiry in cases such as this, therefore, is limited to whether the General Assembly intended to permit multiple punishments for the offenses at issue. In Ohio, the primary legislative statement on the multiplicity issue is found in R.C. 2941.25, concerning allied offenses of similar import. Known as Ohio's multi-count statute, that provision asks essentially whether the offenses correspond to such a degree as to constitute the same offense.

{¶ 16} R.C. 2941.25, however, is not the sole legislative declaration in Ohio on the multiplicity of indictments. Depending upon the offense at issue, that section must be read in concert with other legislative statements on the issue. R.C. 2923.01(F) is such a legislative statement. It sets forth an additional limitation upon multiple punishments in the context of conspiracy offenses. Thus, we review the conspiracy convictions against Childs in the context of both R.C. 2941.25 and 2923.01(F).

A. Counts 14 and 15: Conspiracy to Commit Aggravated Trafficking

{¶ 17} R.C. 2941.25(A) provides: "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." This statute tests whether "the elements of the crimes 'correspond to such a degree that the commission of one crime will result in the commission of the other' " in such instances. If so, the crimes are deemed offenses of similar import and may not be separately punished. *State v. Rance* (1999), 85 Ohio St.3d 632, 638, 710 N.E.2d 699, 705, quoting *State v. Jones* (1997), 78 Ohio St.3d 12, 13, 676 N.E.2d 80, 81. In applying this statute, "the statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract." (Emphasis deleted.) *Rance*, at paragraph one of the syllabus.

{¶ 18} Using this analysis, we conclude that the statutory elements of the offenses contained in Counts 14 and 15 do not correspond to the extent required to prohibit multiple punishments. Because the underlying offenses in each count differ—Count 14 involves former R.C. 2925.03(A)(2), while Count 15 involves former R.C. 2925.03(A)(7)—an element of each crime is unique to that particular violation. Consequently, these offenses are of dissimilar import and may be the subject of separate convictions, provided that they are not prohibited from such under the additional limitation for conspiracies contained in R.C. 2923.01(F).

{¶ 19} R.C. 2923.01(F) prohibits multiple convictions for single conspiracies. That section provides: "A person who conspires to commit more than one offense is guilty of only one conspiracy, when the offenses are the object of the same agreement or continuous conspiratorial relationship."

{¶ 20} Pursuant to this statute, analysis of whether conspiracy offenses are separately punishable under R.C. 2923.01(F) requires a determination as to (1) whether the offenses are the object of the same agreement, and (2) whether the offenses are part of a continuous conspiratorial relationship. If either circumstance exists, the offenses constitute one conspiracy and may not be separately punished.

{¶ 21} The "single agreement" portion of R.C. 2923.01(F) analyzes whether the evidence supports the existence of one or multiple agreements. As explained by the United States Supreme Court in *Braverman v. United States* (1942), 317 U.S. 49, 53, 63 S.Ct. 99, 102, 87 L.Ed. 23, 28, where the evidence reveals one agreement, that "agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one."

{¶ 22} State courts interpreting statutes nearly mirroring our own have employed a similar analysis. In *Doolin v. State* (Fla.App.1995), 650 So.2d 44, 45, the defendant was charged with two counts of conspiracy: conspiracy to kidnap to inflict bodily harm and conspiracy to commit aggravated battery. Holding that these offenses could not be separately punished, the court reasoned that they arose from one agreement. Specifically, no evidence established that the "conspiracy to kidnap to inflict bodily harm was terminated and a separate conspiracy to commit aggravated battery was thereafter agreed to by the co-conspirators." *Id.* Similarly, in *Jones v. State* (Okla.Crim.App.1998), 965 P.2d 385, 386, co-conspirators agreed to murder two individuals at the inception of their plan and the crime was therefore chargeable as only one conspiracy.

6

**{¶ 23}** Here, the evidence supports the existence of separate agreements as to Counts 14 and 15. Unlike the situations described in *Doolin* and *Jones,* the audiotapes reveal a series of agreements,  rather than one initial agreement to commit a particular series of offenses.  In State's Exhibit 37, for instance, Childs conspired to sell four ounces of cocaine.  Charged as Count 15, this conspiracy involved separate negotiations that culminated in a distinctly identifiable agreement for that particular sale. State's Exhibit 41 marked the beginning of a new agreement unrelated to the prior one.  The conversation recorded there evidenced a conspiracy between Childs and Charles to sell drugs to Pauley.  Notably, at no time in any of the prior tapes did the parties agree to or contemplate the future transactions that would be undertaken.  Thus, each sale was brought about by an individual conspiratorial agreement.

**{¶ 24}** Having concluded that multiple agreements existed, we must also, nevertheless, determine whether these agreements were part of an overall continuing conspiratorial relationship under the second part of R.C. 2923.01(F). Although  we find scant judicial interpretation of this concept, we recognize the relevant inquiry to be the extent to which the conspiracy embraces a common and continuous goal.

**{¶ 25}** In *Commonwealth v. Davis* (Pa.Super.1997), 704 A.2d 650, 654, where the overall objective of the conspiracy was to collect a drug debt, the conspirators could not be separately convicted for their multiple agreements to rob the victim by force and to beat him with such intensity as to cause his death. Concluding that the charges of conspiracy to rob and conspiracy to murder were multiplicitous, the court identified the " 'essential  feature of the existing conspiracy' " as a  " 'common plan or scheme to achieve a common, single, comprehensive goal.' " *Id.,* quoting *Commonwealth v. Troop* (1990), 391 Pa.Super. 613, 623, 571 A.2d 1084, 1090.  Similarly, in *State v. Whiteside* (Feb. 10, 1987), Franklin App. No. 86AP-325, unreported, 1987 WL 6532, distinct agreements to

obtain guns over a period of time to be used during a planned gang shootout were considered part of the conspirators' overall goal, and therefore one conspiracy.

{¶ 26} Where co-conspirators committed a series of robberies, however, the individual agreements to commit these robberies were not part of an overall, ongoing conspiracy. *Commonwealth v. Troop,* 391 Pa.Super. at 624-625, 571 A.2d at 1090. Rather, each robbery stemmed from a separate agreement to acquire money in order to purchase cocaine. *Id.* Consequently, the court allowed separate convictions for each offense.

{¶ 27} We view the evidence in the instant case as supporting distinct conspiracies rather than subagreements toward a common overriding objective. Unlike the collection of the drug debt in *Davis*, these conspirators entered into discrete conspiratorial agreements, each with its own short-term goal. Accordingly, these crimes were permissibly charged as separate offenses under the continuous conspiratorial relationship prong of R.C. 2923.01(F).

{¶ 28} Because Counts 14 and 15 satisfy each of the applicable statutory requirements for multiple convictions, we conclude that they are separate offenses for which separate convictions may be upheld.

### B. Count 2: Conspiracy to violate RICO

{¶ 29} Count 2 charged Childs with conspiracy to violate R.C. 2923.32 by engaging in a pattern of aggravated trafficking. The state argues that this count may be punished separately from the conspiracies to commit aggravated trafficking contained in Counts 14 and 15 because (1) the underlying offenses would have been separately chargeable and (2) to hold otherwise would thwart RICO's purpose to enhance penalties where criminal enterprises are involved.

{¶ 30} We believe the conviction on Count 2 fails, however, even before considering the issue of multiplicity. In resolving the multiplicity issue of Counts 14 and 15, we concluded that the evidence demonstrates that each drug sale was the result of a separate agreement, a distinct conspiracy aimed solely toward that

particular short-term goal, and that no single agreement or overall objective to commit a series of offenses existed. This is also the interpretation of the evidence argued by the state.

{¶ 31} Based upon that conclusion, however, we consider a conviction for conspiracy to engage in a pattern of aggravated trafficking to be inconsistent with the evidence. That is, we are unconvinced that the evidence could support both (1) the existence of an agreement to engage in a pattern of aggravated trafficking and (2) a lack of an agreement to commit several offenses of aggravated trafficking. These concepts are irreconcilable, as a conspiracy to commit a pattern of aggravated trafficking requires proof of a single agreement to commit a series of drug offenses—precisely the interpretation of the evidence we reject above. We hold, therefore, that the conviction on Count 2 was not supported by sufficient evidence, and we affirm the appellate court's decision to reverse on that count.

## II. Sufficiency of Indictment

{¶ 32} In its second proposition of law, the state challenges the appellate court's conclusion that Count 14 was defective for failing to specify the type of drug that was the subject of the aggravated trafficking conspiracy. Relying on this court's decision in *State v. Headley* (1983), 6 Ohio St.3d 475, 6 OBR 526, 453 N.E.2d 716, the appellate court reasoned that the identity of the controlled substance is an element of the conspiracy to commit aggravated trafficking and must be included in the indictment.

{¶ 33} The sufficiency of an indictment is subject to the requirements of Crim.R. 7 and the constitutional protections of the Ohio and federal Constitutions. Under Crim.R. 7(B), an indictment "may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged."

**{¶ 34}** An indictment meets constitutional requirements if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. * * * 'Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.' " *Hamling v. United States* (1974), 418 U.S. 87, 117-118, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590, 621, quoting *United States v. Hess* (1888), 124 U.S. 483, 487, 8 S.Ct. 571, 573, 31 L.Ed. 516, 518.

**{¶ 35}** Citing *Headley*, Childs argues that, by omitting the specific controlled substance, the indictment failed to state the elements of conspiracy to commit aggravated trafficking under R.C. 2925.03(A)(2). While *Headley* did require the specific substance to be identified in an indictment for aggravated trafficking, we disagree that *Headley* controls the question of which elements are necessary in an indictment for *conspiracy* to commit aggravated trafficking. The nature of the controlled substance, while an element of aggravated trafficking, is not an element of the conspiracy to commit that offense.

**{¶ 36}** Where the offense at issue is charged as a conspiracy, it is well established that it is the elements of the conspiracy that must be provided: "[C]onspiring to commit a crime is an offense wholly separate from the crime, which is the object of the conspiracy." *United States v. Threadgill* (C.A.5, 1999), 172 F.3d 357, 367. "Thus, we have consistently held that a conspiracy charge need not include the elements of the substantive offense the defendant may have conspired to commit." *Id.* "The object crime, while important, is secondary, and need not be described" with particularity. *Commonwealth v. Cantres* (1989), 405 Mass. 238, 241, 540 N.E.2d 149, 151.

{¶ 37} Here, Childs does not contend that any of the statutory elements of the *conspiracy* were insufficiently or incompletely set forth in the indictment. Because we conclude that a conspiracy charge need not include the specific controlled substance involved in the underlying offense, we hold that each element of the offense was adequately charged.

{¶ 38} We also conclude that the indictment sufficiently notified Childs of the charge against her to satisfy constitutional requirements. In holding the indictment defective, the appellate court emphasized that the indictment failed to inform Childs of the severity of the offense charged. While we agree that she was entitled to know of the severity of the offense in order to adequately satisfy her right to notice of the charge, we disagree that that information had to be expressly stated in the indictment.

{¶ 39} Courts have consistently held that certain information need not be specifically set forth in the indictment in order to be sufficiently provided to defendants: "[A] valid indictment need not notify the defendant of the sentencing possibilities to which he is exposed except in a general way." *Id.,* 405 Mass. at 241, 540 N.E.2d at 151.

{¶ 40} Thus, in *State v. Burch* (July 8, 1987), Summit App. No. 12896, unreported, 1987 WL 14035, the indictment was considered sufficient where the defendant was able to deduce certain information from the statements contained in the indictment. There, the indictment failed to set forth the precise controlled substance involved in the underlying crime for which the conspiracy charge was issued. The defendants, however, were considered sufficiently informed that a Schedule I or II drug was involved, since that information, while not expressly stated in the indictment, could be determined from a reading of the indictment together with the statute.

{¶ 41} We apply the same rationale here. The indictment stated that Childs was charged with conspiracy to commit aggravated trafficking in violation of

former R.C. 2925.03(A)(2), 145 Ohio Laws, Part III, 5655. Aggravated trafficking is specifically defined in Section (C) of that statute as requiring a Schedule I or II substance, with the exception of marijuana. That statute further states that aggravated trafficking under Section (A)(2) is a felony of the third degree. Former R.C. 2925.03(C)(2), 145 Ohio Laws, Part III, 5656. Pursuant to former R.C. 2923.01(J)(3), a conspiracy to commit this crime is a fourth-degree felony. 141 Ohio Laws, Part II, 3862. Accordingly, as in *Burch*, the indictment contained sufficient information from which the necessary information—here the severity of the offense and the category of substances involved—could be deduced. The indictment was therefore sufficient and Childs's conviction on that count stands.

### III. Suppression of Audiotapes

{¶ 42} At the trial court level, Childs moved to suppress the audiotapes of the conversations between herself and her husband, and herself and Sean Pauley. Contending that these tapes were made in violation of R.C. 2933.52, Childs argued that they were not properly admitted into evidence under R.C. 2933.62(A). The trial court denied the motion and admitted the tapes, but the appellate court reversed that decision on appeal. The appellate court ruled that the state had the burden of proving whether the tapes were improperly obtained and specifically whether Childs consented to the recording of the conversations. On that basis, it remanded the issue to the trial court for determination of the existence of consent. The state argues, however, and we agree, that Childs bore the burden of proving that the tapes should be suppressed.

{¶ 43} Former R.C. 2933.52(A)(1) provided that "[n]o person purposely shall * * * [i]ntercept * * * any wire or oral communication." 142 Ohio Laws, Part II, 2704. Under R.C. 2933.62(A), an illegally intercepted communication cannot be used as evidence in court. However, an intercepted communication is not illegal if it is obtained by someone who is not a law enforcement officer, provided that the person is either (1) a party to the intercepted communication or (2) obtains the

12

permission of one of the parties to the communication, and the purpose of the interception is not to commit a crime, tort, or other injurious act. R.C. 2933.52(B)(4).

{¶ 44} Because the state argues the applicability of only the second prong of that exception, we will limit our analysis to that section. Although Childs testified that she never consented to the recordings, neither she nor the state presented evidence as to whether Pauley consented. Because the "consent" exception requires the consent of only one party to the conversation to render the interception legal, determination of this issue is crucial to the tapes' legality and therefore their admissibility. Accordingly, given the failure to provide evidence on this issue, its outcome turns upon which party bore the burden of proof.

{¶ 45} It has been said that the party seeking to suppress evidence bears the burden of proof. See, *e.g., Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 220-221, 524 N.E.2d 889, 894. In the particular context of Fourth Amendment searches and seizures, the burden is upon the state if the contested evidence was obtained without a warrant, but upon the defendant if the search or seizure was pursuant to a warrant. *United States v. Carhee* (C.A.10, 1994), 27 F.3d 1493, 1496.

{¶ 46} Because the motion to suppress at issue here involved private rather than governmental action, the Fourth Amendment is not implicated. See *United States v. Kennedy* (D.Kan.2000), 81 F.Supp.2d 1103, 1112 (Fourth Amendment's protection against unreasonable searches and seizures proscribes only governmental action). Instead, the motion rests solely upon an alleged violation of Ohio's wiretapping statute. The burden of proof has not yet been decided in this specific context in Ohio. We consider federal law on this issue instructive.

{¶ 47} Where a party seeks to suppress evidence arguably obtained in violation of the federal wiretapping statute, federal courts have placed the burden of proof on that party. In *United States v. Ross* (C.A.8, 1983), 713 F.2d 389, for instance, the defendant sought to suppress tapes of incriminating conversations

under a provision prohibiting willful interceptions under the federal wiretapping statute. That court determined that the burden of proving the existence of willfulness to satisfy the exception rested upon the party seeking to suppress the tapes. *Id.* at 391. Likewise, in *United States v. Phillips* (C.A.8, 1976), 540 F.2d 319, 326, the defendant bore the burden of proving that the tape was unlawfully recorded to support his motion to suppress. See, also, *United States v. Traficant* (N.D.Ohio 1983), 558 F.Supp. 996.

{¶ 48} We adopt this reasoning for cases concerning Ohio's wiretapping statute and hold that the party seeking to suppress evidence allegedly obtained in violation of R.C. 2933.52(A)(1) bears the burden of proof on that issue. Accordingly, Childs bore the burden of proving that the tapes should have been suppressed and would have had to demonstrate that the tapes were made in violation of the wiretapping statute. To do so would have required evidence that *neither* party consented to the recording. Since Childs offered proof only that *her* consent was not obtained, she failed to sustain that burden and the trial court properly denied her motion to suppress.

## IV. Conclusion

{¶ 49} Based upon the foregoing, we affirm the appellate court's judgment as to Count 2, but reverse its judgment as to Counts 14 and 15.

*Judgment affirmed in part*

*and reversed in part.*

MOYER, C.J., F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and RESNICK, JJ., concur in judgment.

———————————

14