This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Richard Goad has appealed from a judgment of the Wayne County Court of Common Pleas granting Appellee Jodie A. Steen a civil protection order ("CPO") pursuant to R.C. 3113.31. This Court affirms.
 I
In February 2001, Steen filed a complaint seeking a CPO against Goad. At that time, Steen and Goad had been living together for approximately ten years with their son Garrett, who was eight years old. The matter proceeded to a hearing, following which the trial court granted the CPO. Goad has timely appealed, asserting two assignments of error.[1] This Court has rearranged Goad's assignments of error to facilitate review.
 II Assignment of Error Number Two The trial court abused its discretion when admitting into evidence over objection of [Goad] an audio tape of a conversation between a third party and [Goad] when neither person was aware that their conversation was being recorded.
Goad has argued that the trial court erroneously admitted into evidence the contents of an audio taped conversation between Goad and a third party. Specifically, Goad has argued that Ohio's wire tapping statute prohibits the admission into evidence of the tape's contents.
Because no state action is involved, the Fourth Amendment has no application to the instant case. See State v. Davies (Sept. 12, 2001), Summit App. No. 20456, unreported, at 8. Goad's argument therefore rests entirely on Ohio's statutory prohibition against illegally intercepting wire communications, and against using evidence derived therefrom.
R.C. 2933.62(A) prohibits the admission of illegally intercepted communications "in any trial, hearing, or other proceedings in or before any court * * * if the disclosure of that information is in violation of [R.C. 2933.51] to [R.C. 2933.66]." Whether a communication is illegally intercepted must be determined by reference to R.C. 2933.52.
R.C. 2933.52(A)(1) prohibits, inter alia, the purposeful interception of wire communications. There are certain situations, however, to which the general prohibition of R.C. 2933.52(A)(1) does not apply. One such situation is described at R.C. 2933.52(B)(4):
 [R.C. 2933.52] does not apply to * * * [a] person who is not a law enforcement officer and who intercepts a wire * * * communication, if the person is a party to the communication or if one of the parties to the communication has given the person prior consent to the interception, and if the communication is not intercepted for the purpose of committing a criminal offense or tortious act in violation of the laws or Constitution of the United States or this state or for the purpose of committing any other injurious act[.]
An interception of a communication is not illegal, therefore, if it is procured by someone who is not a law enforcement officer who obtains the permission of one of the parties to the intercepted communication and the purpose of the interception is not to commit a crime, tort, or other injurious act. R.C. 2933.52(B)(4); State v. Childs (2000),88 Ohio St.3d 558, 567.
The party seeking to suppress evidence allegedly obtained in violation of R.C. 2933.52(A)(1) bears the burden of proving that the communication was illegally intercepted. Childs, at 568. In the present case, the tape played at the CPO hearing contained taped conversations between Goad and Steen's friend Carrie Sweeney. Goad has argued that he sustained his burden under Childs by testifying that he did not make the tape, did not consent to the taping of the conversations on the tape, and was not aware of the tape's existence. In order to meet his burden of demonstrating that the communications on the tapes were illegally intercepted, however, Goad must have presented evidence that neither party consented to the recording. See Childs at 568. Goad has not alleged, nor does the record support, that any evidence was presented at the CPO hearing that Carrie Sweeney did not consent to the taping of the conversations played at the hearing. Goad therefore failed to meet his burden of showing that the contents of the audio tape played at the CPO hearing were illegally intercepted. Goad's second assignment of error is overruled.
 Assignment of Error Number One The decision of the trial court is against the manifest weight of the evidence and prejudicial to the rights of [Goad].
Next, Goad has argued that the trial court erred in granting the CPO because the decision was against the manifest weight of the evidence. This Court disagrees.
"When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context." Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a conviction is against the manifest weight of the evidence, this Court must:
 review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. An appellate court that overturns a jury verdict as against the manifest weight of the evidence acts in effect as a "thirteenth juror," setting aside the resolution of testimony and evidence as found by the trier of fact. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. This action is reserved for the exceptional case where the evidence presented weighs heavily in favor of the defendant. Otten, supra.
R.C. 3113.31 sets forth the procedure governing the issuance of CPOs. In order to issue a CPO pursuant to this statute, "the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner * * * [is] in danger of domestic violence. R.C. 3113.31(D)."Felton v. Felton (1997), 79 Ohio St.3d 34, paragraph two of the syllabus. As used in R.C. 3113.31:
 "Domestic violence" means the occurrence of one or more of the following acts against a family or household member:
 Attempting to cause or recklessly causing bodily injury; [or]
 Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of [R.C.] 2903.211 * * *[.]
R.C. 3113.31(A)(1) (a)-(b). R.C. 2903.211(A) provides:
 No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
As used in R.C. 2903.211:
 "Pattern of conduct" means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents.
 "Mental distress" means any mental illness or condition that involves some temporary substantial incapacity or mental illness or condition that would normally require psychiatric treatment.
R.C. 2903.211(C) (1)-(2).[2]
At the hearing on Steen's petition for a CPO, Steen testified that in November, 2000, she told Goad she was going to leave the home where they had been living for ten years. She stated that after she told Goad that she intended to leave, he physically abused her and intimated that "things could happen to her" while she was driving her vehicle. Steen further testified that Goad used Steen's vehicle one day during February 2001, and returned the automobile with a broken brake line.
Steen further testified that during December 2000, after Goad had been drinking, he grabbed scissors out of Steen's hand as she was wrapping Christmas presents, grabbed her head, and asked if she would like a haircut. She stated that the next day he slapped and punched her head, and told her that if she ever left him "nobody would want [her] because he would F up [her] face so bad that nobody would ever look at [her] again." She also testified that Goad continuously called her family and wanted to know where she was and what she was doing. She stated Goad also made threats to her and her friend, Carrie Sweeney, that he would kill Steen and her entire family. Finally, Steen testified that Goad shoved a table into her chest in November 2000, when she told him she wanted to leave, and that he slapped hot coffee out of her hands two or three times beginning in December 2000.
Goad also testified at the CPO hearing. He denied threatening to kill Steen, and claimed that he never committed any act of violence upon her. However, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." State v. Haydon (Dec. 22, 1999), Summit App. No. 19094, unreported, at 14, appeal not allowed (2000), 89 Ohio St.3d 1482, citing State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, unreported, at 4. Therefore, based on Steen's testimony, the trial court could reasonably have found by a preponderance of the evidence that Steen was in danger of domestic violence. This Court cannot conclude that the trial court's determination is so clearly against the manifest weight of the evidence as to create a manifest miscarriage of justice. Goad's first assignment of error is overruled.
 III
Having overruled Goad's assignments of error, this Court affirms the judgment of the court of common pleas.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BATCHELDER, P.J., BAIRD, J. CONCUR.
[1] Steen has not filed an appellate brief.
[2] R.C. 2903.211 has been amended effective April 10, 2001. In the amended version, "pattern of conduct" and "mental distress" are defined at subsection (D). R.C. 2903.211(D) (1)-(2).