OPINION
{¶ 1} In this action, Paul Hendrickson appeals from his conviction and sentence on charges of involuntary manslaughter, aggravated vehicular homicide, aggravated vehicular assault, fleeing and eluding a police officer, felonious assault of a police officer, and unauthorized use of a motor vehicle. After Hendrickson pled no contest to the charges, the trial court sentenced him to seven years for involuntary manslaughter (count one) and seven years for aggravated vehicular assault (count two), to be served concurrent with count one. Various sentences were imposed on the remaining charges, resulting in a total term of ten years.
 {¶ 2} Hendrickson's original appellate counsel filed a brief pursuant to Anders v. California (1967), 386 U.S. 738, 87 S.Ct. 1396,18 L.Ed.2d 493, indicating that he could not find any possible meritorious issues for appellate review, other than what appeared to be a clerical defect in the sentencing entry. (The aggregate sentence imposed in the entry appears to be thirteen years, but the entry also says that a total ten year sentence is being imposed. The trial court clearly intended, however, only to impose a total of ten years).
 {¶ 3} After reviewing the record, we filed an entry discussing theAnders brief. We briefly considered a suppression motion that Hendrickson had filed in the trial court, but found no arguable merit to any issues raised in the motion. However, we did express concern over the trial court's decision to impose concurrent sentences for both involuntary manslaughter and aggravated vehicular homicide, since the victim of each offense was the same person. Consequently, we appointed new counsel to address this issue, as well as any other issues counsel might discover. See State v. Hendrickson (May 24, 2002), Montgomery App. No. 19045.
 {¶ 4} New appellate counsel subsequently filed a brief, raising the following assignment of error:
 {¶ 5} "The Trial Court violated Hendrickson's Fifth Amendment rights by entering convictions and sentencing him on both involuntary manslaughter and aggravated vehicular homicide."
 {¶ 6} After considering the applicable law, we find the single assignment of error without merit. We have reservations about the correctness of sentencing Hendrickson on both charges, but feel we have no choice under the law established in State v. Rance, 85 Ohio St.3d 632,1999-Ohio-291. Accordingly, we will affirm the trial court judgment.
 I {¶ 7} The charges against Hendrickson arose from a fatal automobile accident that took place in the early morning hours of February 10, 2001. At the time of the accident, Henderson was being pursued by a police cruiser. Hendrickson had failed to stop on a police officer's command, and had nearly collided with the officer's cruiser. During the ensuing chase, Hendrickson's truck rear-ended a 1989 Honda Civic that was stopped at a red light. The Honda was propelled into the intersection and then collided with a third vehicle. The driver of the Honda was pronounced dead at the scene, and the driver of the third vehicle received injuries to his lung, hip, and stomach.
 {¶ 8} Hendrickson was taken to the hospital, where his blood alcohol level was revealed to be significantly over the legal limit (according to the evidence at the suppression hearing). Subsequently, Hendrickson was indicted on several charges, including involuntary manslaughter and aggravated vehicular homicide. During the sentencing hearing, the trial judge stated that the involuntary manslaughter and aggravated vehicular homicide charges would merge by law, so that the seven year sentence for involuntary manslaughter would be served concurrently with the seven year sentence for aggravated vehicular homicide.
 {¶ 9} As we mentioned, Hendrickson contends that the trial court violated his Fifth Amendment rights by sentencing him on both charges. In this regard, Hendrickson first relies on a rule allegedly established inState v. Johnson (1983), 6 Ohio St.3d 420, reversed 467 U.S. 493,104 S.Ct. 2536, 81 L.Ed.2d 425. According to Hendrickson, the Ohio Supreme Court held in Johnson that the General Assembly did not intend cumulative sentences for homicide offenses if only one victim is involved. Since the legislature has not subsequently amended Ohio's multiple count statute, Hendrickson believes Johnson is still in force and precludes cumulative sentences in the present case.
 {¶ 10} Ohio's multiple count statute is R.C. 2941.25, which provides that:
 {¶ 11} "(A) [w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 12} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 13} In Johnson, the Ohio Supreme Court considered whether a defendant who pled guilty to involuntary manslaughter could also be convicted of murder, where only one victim was involved. In analyzing this issue, the court noted that the standard test was set out inBlockburger v. United States (1932), 284 U.S. 299, 304, 52 S.Ct. 180,182, 76 L.Ed. 306. According to Blockburger, "`where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. * * *'" 6 Ohio St.3d at 422.
 {¶ 14} In Johnson, the Ohio Supreme Court interpreted R.C. 2941.25
as further effectuating Double Jeopardy principles "by comparing the elements of the various statutory offenses with which the defendant is charged." Id. After comparing the elements of murder and involuntary manslaughter, the court remarked that "in any case where there is but one victim, the accused may be found guilty of either murder or involuntary manslaughter but certainly not both." Id. at 424.
 {¶ 15} Although the United States Supreme Court reversed the case, the court did accept the Ohio Supreme Court's determination that the Ohio legislature did not intend cumulative sentences for murder and manslaughter. 467 U.S. at 499. Ultimately, the United States Supreme Court indicated that the defendant in Johnson could, in fact, be tried for both murder and involuntary manslaughter, but that issues would arise in that event as to whether cumulative punishments could be imposed under state law. Id.
 {¶ 16} While the present case does not involve murder and involuntary manslaughter, the general observations in Johnson have some merit, i.e., we find it hard to understand how a defendant may be punished twice for the death of only one victim. More important, the Ohio Supreme Court made a similar choice in State v. Chippendale (1990),52 Ohio St.3d 118. Specifically, in Chippendale, the court found that involuntary manslaughter and aggravated vehicular homicide were allied offenses of similar import. Id. at 121.
 {¶ 17} Like the present case, Chippendale involved a defendant who killed one victim while driving under the influence of alcohol. Id. at 118-19. The defendant was ultimately convicted of both involuntary manslaughter and vehicular homicide. Id. at 119. After deciding that the offenses were allied, the court then found they were not committed with a separate animus because they occurred at one moment in time (when the accident took place). Id. at 121.
 {¶ 18} If Chippendale were still controlling, we would reach the same conclusion in the present case, i.e., that Hendrickson could not be punished for both involuntary manslaughter and aggravated vehicular homicide. However, in Rance, 85 Ohio St.3d 632, 1999-Ohio-291, the Ohio Supreme Court modified its interpretation of R.C. 2941.25. In particular, the court found that R.C. 2941.25 manifests "the General Assembly's intent to permit, in appropriate cases, cumulative punishments for the same conduct." Id. at 633. As a result, the court decided that under the appropriate analysis, "statutorily defined elements of offenses that are claimed to be of similar import are compared in the abstract." Id. at syllabus (emphasis in original). The court also overruled its prior decision in Newark v. Vazirani (1990), 48 Ohio St.3d 81, which had compared elements based on particular facts alleged in the indictment.85 Ohio St.3d at 637.
 {¶ 19} Although the Ohio Supreme Court's expressed intent was to clarify the law, Rance has been criticized in a number of subsequent cases. For example, in State v. Waldron (Sept. 1, 2000), Ashtabula App. No. 99-A-0031, 2000 WL 1257520, the majority opinion applied Rance and held that involuntary manslaughter and aggravated vehicular homicide were not allied offenses of similar import. However, the concurring opinion pointed out that in reaching this conclusion, the court had said not only that the defendant "was guilty of killing two people, * * * [but also that] he was guilty of killing each victim two times." Id. at *5 (Christley, concurring). According to Judge Christley, such a "shotgun conviction" was not what the General Assembly intended when it enacted R.C. 2941.25. Instead, the drafters of the statute explicitly expressed a desire to avoid "shotgun convictions." Id. at *6.
 {¶ 20} Judge Christley also noted that the Fourth and First Appellate Districts had confronted similar dilemmas where defendants were convicted of two similar offenses for causing injury or death to one victim. Id. Although Judge Christley felt Rance was troublesome and led to results that confounded rational legal analysis, she felt compelled to affirm the convictions. The judge did, however, urge the Ohio Supreme Court to revisit the issue as soon as possible. Id. at *7. The dissenting judge in Waldron criticized the outcome as "absurd." Id. (O'Neill, dissenting).
 {¶ 21} Judge Painter of the First Appellate District expressed a similar opinion, stating that "Rance is not just intuitively wrong; it is legally wrong." State v. Palmer, 148 Ohio App.3d 246, 2002-Ohio-3536, ¶ 17 (Painter, dissenting). The majority opinion in Palmer also criticized Rance, but felt bound to follow the decision until the Ohio Supreme Court indicated a different course. Id. at ¶ 13.
 {¶ 22} We agree with the First District and the view of the majority of the panel in Waldron. Before Rance was decided, involuntary manslaughter and aggravated vehicular homicide were allied offenses of similar import. Waldron, 2000 WL 1257520, * 7, citing Chippendale,52 Ohio St.3d 118, among other cases. After Rance, the same offenses are no longer allied offenses, simply because their elements have been compared in the abstract. However, in some cases, this leads to illogical results.
 {¶ 23} In the present case, Hendrickson was charged with violating R.C. 2903.04(A) (involuntary manslaughter), which provides that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." The felony mentioned in this count of the indictment was failure to comply with an order or signal of a police officer [a violation of R.C. 2921.3310(B) and R.C. 2921.331(C)(5)(a)(i)].
 {¶ 24} Hendrickson was also charged with violating R.C.2903.06(A)(1) (aggravated vehicular homicide), which states that "[n]o person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code * * *." R.C. 4511.19(A) prohibits persons from operating motor vehicles while under the influence of alcohol.
 {¶ 25} Comparing these elements in the abstract indicates that they do not "`correspond to such a degree that the commission of one crime will result in the commission of the other.'" Rance,85 Ohio St.3d at 638 (citation omitted). Obviously, one can commit a felony that causes death without operating a motor vehicle and without driving under the influence of alcohol. Likewise, an individual may cause a death by driving under the influence of alcohol without committing a felony. See R.C. 4511.99(A), which indicates that violations of R.C. 4511.19(A) can be misdemeanors rather than felonies.
 {¶ 26} Despite the misalignment of offenses in the abstract, only one death occurred under the facts of the present case. Consequently, Hendrickson should have been sentenced either for involuntary manslaughter or for aggravated vehicular homicide, not both. In fact, this was the trial judge's actual intention. As we noted earlier, the trial judge said during sentencing that the two charges merged by law. He then indicated that the sentences would be concurrent, due to the merger.
 {¶ 27} Although we must affirm the judgment based on Rance, we should note that the trial judge did not correctly apply merger. If the judge intended to merge the charges, he should have sentenced Hendrickson for only one offense. See, e.g., State v. McGuire, 80 Ohio St.3d 390,399, 1997-Ohio-335 (indicating that allied offenses of similar import merge at sentencing). Moreover, imposing concurrent sentences would not have cured the error. Specifically, even concurrent sentences would be prejudicial, due to the potential for adverse consequences like unfavorable parole consideration. See, e.g., State v. Nievas (1997),121 Ohio App.3d 451, 458.
 {¶ 28} As we stressed, however, we must follow Rance until such time as the Ohio Supreme Court changes the law. Consequently, the involuntary manslaughter and aggravated vehicular homicide charges were not allied offenses of similar import, and should not have been merged.
 {¶ 29} Hendrickson's second argument is that Rance was implicitly overruled by the Ohio Supreme Court's subsequent decision in State v.Fears, 86 Ohio St.3d 329, 1999-Ohio-111. Fears was a death penalty case, in which the defendant claimed that a kidnapping specification should have been merged with an aggravated robbery specification. According to the defendant, the failure to merge the specifications allowed duplicate consideration of aggravating circumstances in the penalty phase.86 Ohio St.3d at 343.
 {¶ 30} In addressing this point, the Ohio Supreme Court did not mention Rance, nor did it use an "abstract" comparison of elements. Instead, the court relied on State v. Jenkins (1984), 15 Ohio St.3d 164, which was decided prior to Rance. Jenkins was also a death penalty case and involved the issue of cumulative specifications. In Jenkins, the Ohio Supreme Court focused on the circumstances of the particular crime to decide whether kidnapping and aggravated robbery specifications should have been merged. 15 Ohio St.3d at 197-198.
 {¶ 31} Citing Jenkins, the Fears court noted that "`implicit within every robbery (and aggravated robbery) is a kidnapping.'"86 Ohio St.3d at 344. Accordingly, the court held that the kidnapping and robbery specifications should have merged unless these offenses were committed with a separate animus. Id.
 {¶ 32} In State v. Grant (March 23, 2001), Hamilton App. No. C-971001, the First District Court of Appeals interpreted these comments as suggesting that the Ohio Supreme Court had implicitly overruledRance. Slip. op., p. 11. Hendrickson urges us to reach the same conclusion in the present case. However, we decline the request.
 {¶ 33} In the first place, the First District has said in later cases that it intends to follow Rance, despite the contrary comments made in Grant. See, e.g., Palmer, 148 Ohio App. 246, 2002-Ohio-3536, ¶¶ 10-13. Among the reasons for the First District's change of opinion is that the Ohio Supreme Court continues to use the Rance test, without citation to Fears. Id. at ¶ 12, citing State v. Childs,88 Ohio St.3d 558, 2000-Ohio-425.
 {¶ 34} We think the First District's approach is correct. Until the Ohio Supreme Court expressly rejects Rance, we will continue to compare statutory elements in the abstract. This has been our procedure to date, although we have not specifically analyzed the issue. See Statev. Thornton, Montgomery App. No. 19116, 2002-Ohio-1896, ¶ 14; Statev. Brown, Montgomery App. No. 18643, 2002-Ohio-277, 2002 WL 91088, *4;State v. Powell (Dec. 15, 2000), Montgomery App. No. 18095, 2000 WL 1838716, *15; and State v. Simons (Nov. 22, 2000), Champaign App. No. 99CA5, 2000 WL 1726904, *10.
 {¶ 35} We do note that in two cases involving kidnapping charges, the Tenth District Court of Appeals has applied Fears rather than Rance. See State v. Savage, Franklin App. No. 02AP-202, 2002-Ohio-6837, ¶¶ 42-45 (merging kidnapping and aggravated robbery charges), and State v.Jackson, Franklin App. Nos. 02AP-289, 02AP-298, 2003-Ohio-37, ¶¶ 108-111 (merging kidnapping, sexual imposition, and corruption of a minor convictions with rape convictions). The Tenth District did not explain its reasoning, beyond noting that Fears was decided after Rance. We do agree that in the context of kidnapping charges, courts might have a hard time distinguishing Fears. However, since the present case does not involve kidnapping charges, we need not resolve this point.
 {¶ 36} Based on the preceding discussion, the first assignment of error is without merit and is overruled. Accordingly, the judgment of the trial court is affirmed.
GRADY, J., and YOUNG, J., concur.