DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Anthony Sandoval, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.
 I {¶ 2} On July 15, 2006, Sandoval and his girlfriend, Debra Sturgeon, decided to frequent several drinking establishments with one another despite the fact that there was an active temporary protection order in place, ordering Sandoval to stay away from Sturgeon. The couple had several drinks at several different places and finally wound up at Kennedy's Broadway Billiards. There, the couple had an argument because Sturgeon disliked the way in which Sandoval was speaking with one of the female barmaids. Both Sandoval and Sturgeon shared jealous streaks and frequently accused each other of cheating. Just two weeks before this incident, Sandoval started a fistfight at another bar after becoming convinced that an unknown *Page 2 
male at the bar had taken an interest in Sturgeon. Sandoval also had a previous conviction for aggravated assault and another for committing domestic violence with regard to Sturgeon.
 {¶ 3} Sturgeon drove Sandoval home after the two began fighting and left him there to return to the bar even though Sandoval became quite angry. Sandoval called Sturgeon later in the evening, and she told Sandoval where he could find her. Accordingly, he left his home and began walking back to meet Sturgeon.
 {¶ 4} Sturgeon, after dropping Sandoval at home, had joined one of her girlfriends, and the two had walked to a nearby bar to listen to a band. At the bar, Sturgeon met David Conti. She spoke with Conti until it was time to leave and asked him if he would walk her to her car. He agreed, and the two proceeded to walk down Broadway Street together.
 {¶ 5} Sandoval, on his walk back to meet Sturgeon, spotted her walking with Conti on Broadway Street. Without warning, Sandoval approached the two, pushed Sturgeon down on the ground, and punched Conti in the head. Conti fell to the ground, and Sandoval continued to punch him. As Sandoval was beating Conti, a car pulled up. The driver, Lieutenant Walter Leadbetter of the Lorain Fire Department, yelled at Sandoval and got out of his vehicle to help. Sandoval stopped hitting Conti and walked away. Although Lieutenant Leadbetter called the paramedics and performed CPR on Conti until they arrived, Conti died as a result of the injuries he sustained.
 {¶ 6} When the police arrived on scene they interviewed the witnesses, including Sturgeon, who had stayed at the scene while Sandoval walked off. The police noticed a trail of blood leading away from the scene and were able to follow it back to Kennedy's Broadway Billiards. There, they found Sandoval at the bar with several bloody lacerations on his knuckles. *Page 3 
 {¶ 7} On July 26, 2006, the grand jury indicted Sandoval on charges of murder, pursuant to R.C. 2903.02(B), and felonious assault, pursuant to R.C. 2903.11(A)(1). Sandoval waived his right to a jury trial, and the matter proceeded to a bench trial on October 1, 2007. On October 5, 2007, the trial court found Sandoval guilty of both offenses and sentenced him to a total of fifteen years to life in prison.
 {¶ 8} On October 25, 2007, Sandoval filed his notice of appeal. Sandoval's appeal is now before this Court and raises two assignments of error for our review.
 Assignment of Error Number One "THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR A VERDICT OF GUILTY TO THE LESSER-INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER WHERE THE EVIDENCE SHOWED THAT APPELLANT ACTED WHILE UNDER THE INFLUENCE OF SUDDEN PASSION OR IN A SUDDEN FIT OF RAGE."
 {¶ 9} In his first assignment of error, Sandoval argues that the trial court erred in refusing to consider the lesser-included offense of voluntary manslaughter. Specifically, he argues that the factual record supports a finding that he killed Conti in the heat of passion. We disagree.
 {¶ 10} To determine whether the trier of fact must consider a lesser-included offense, the court must determine whether "the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense."State v. Divincenzo, 9th Dist. No. 05CA0105-M, 2006-Ohio-6330 at ¶ 34, quoting State v. Carter (2000), 89 Ohio St.3d 593, 600. While voluntary manslaughter is not a lesser-included offense of murder, the same test applies to determine whether the trier of fact must consider the offense of voluntary manslaughter in addition to the offense of murder.State v. Shane (1992), *Page 4 63 Ohio St.3d 630, 632. Consequently, the trier of fact must consider the offense of voluntary manslaughter if "the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." Id., citingState v. Tyler (1990), 50 Ohio St.3d 24, 36.
 {¶ 11} In an appeal from a bench trial, this Court construes an appellant's argument that the trial court should have convicted him of a lesser offense as a challenge to the weight of the evidence. SeeState v. McDonald, 9th Dist. No. 02CA0045-M, 2003-Ohio-2427, at ¶ 7-16. When considering a manifest weight argument, the Court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 12} The record reflects that the evidence presented at trial would not have reasonably supported an acquittal on the charge of murder. Sandoval admitted that he had never met Conti before the night of July 15, 2006. He further admitted that he punched Conti repeatedly after seeing him with Sturgeon. Sturgeon testified that Sandoval "came out of nowhere" as she was *Page 5 
walking with Conti and repeatedly hit Conti even after he fell to the ground. Sturgeon further testified that Conti had done nothing to provoke Sandoval.
 {¶ 13} Lieutenant Leadbetter testified that when he first spotted Sandoval from inside his car, he saw Conti on the ground and Sandoval on top of him, punching him. He specified that he saw Sandoval throwing several punches straight down at Conti while Conti lay, unmoving on his back. Lieutenant Leadbetter's car passenger, his wife Karen Leadbetter, confirmed that when they pulled over in their car Conti appeared to be unconscious and "was just laying there." Finally, Dr. Paul M. Matus, the Lorain County Coroner, testified that Conti died from an "[a]cute traumatic subarachnoid hemorrhage" in the brain and brain swelling and herniation caused by blunt impacts to the head. Dr. Matus opined that, within a reasonable degree of medical certainty, Conti died due to a punch and/or a blunt-force trauma to the head, particularly on the right side of the skull.
 {¶ 14} Based on the evidence, we cannot conclude that the trial court erred in finding that the evidence reasonably supported Sandoval's charge of felony murder. See Shane, 63 Ohio St.3d at 632. The evidence supports the trial court's conclusion that Sandoval knowingly caused serious physical harm to Conti, which proximately resulted in Conti's unlawful death. See R.C. 2903.11(A)(1); R.C. 2903.02(B). Thus, the trial court did not err in failing to consider the charge of voluntary manslaughter because the conviction for murder was reasonably supported and was not against the weight of the evidence. See Shane, supra.
 {¶ 15} Moreover, the trial court did not err in failing to consider the charge of voluntary manslaughter because the evidence does not reasonably support a conviction on that charge. The voluntary manslaughter statute provides that:
 "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the *Page 6 
victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another[.]" R.C. 2903.03(A).
Under the objective component of voluntary manslaughter, the issue is "whether the alleged provocation [Appellant suffered] is reasonably sufficient to bring on sudden passion or a fit of rage." State v.Mack (1998), 82 Ohio St.3d 198, 201. The provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." Shane, 63 Ohio St.3d at 635.
 {¶ 16} Sandoval argues that the objective prong of the voluntary manslaughter test was satisfied because the Ohio Supreme Court has recognized that the discovery of adultery is a "classic voluntary manslaughter situation." See id. at 635. He further argues that the effect of the "act of adultery" applies with equal force to unmarried couples in a serious relationship. Regardless of whether this is true, the record does not contain even a scintilla of evidence in support of the contention that Conti provoked Sandoval. Sturgeon testified that Conti merely walked to her car. Conti, a man that neither Sturgeon nor Sandoval had ever met before, simply agreed to escort her to her car so that she would not have to walk alone. Sandoval testified that when he saw the two walking together, he also saw Conti reach out and touch Sturgeon's face. The mere sight of another person touching a significant other's face does not rise to the level of adultery or reasonably sufficient provocation. That a reasonable person would beat another human being to death for such an act, if in fact the act even occurred, is quite incomprehensible. Sandoval, with his multiple convictions for aggravated assault and for domestic violence, acted far outside the realm of reasonable behavior. As such, the trial court did not err in convicting him of felony murder instead of voluntary manslaughter. Sandoval's first assignment of error lacks merit. *Page 7 
 Assignment of Error Number Two "APPELLANT'S CONVICTION FOR MURDER MUST BE REVERSED BECAUSE THE INDICTMENT FAILS TO CHARGE A MENS REA ELEMENT FOR THE CRIME OF MURDER IN VIOLATION OF APPELLANT'S STATE CONSTITUTIONAL RIGHT TO A GRAND JURY INDICTMENT AND HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS."
 {¶ 17} In his second assignment of error, Sandoval argues that his conviction must be reversed due to a defective indictment. Specifically, he argues that the State failed to include the requisite mens rea element for the crime of murder in his indictment and that such a failure constitutes structural error mandating reversal. We disagree.
 {¶ 18} Sandoval's indictment for murder reads, in relevant part, as follows:
 "[T]hat [Sandoval], in the County of Lorain, unlawfully on or about July 16, 2006, did, cause the death of David Conti, as a proximate result of committing or attempting to commit 2903.11(A)(1), in violation of Section 2903.02(B) of the Ohio Revised Code, a felony, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Ohio."
Count Two of Sandoval's indictment, indicting him for felonious assault, provides that he "did, knowingly, cause serious physical harm to David Conti, a violation of Section 2903.11(A)(1) * * * [and] a Felony of the Second Degree[.]" Sandoval concedes that the indictment charges the mens rea of "knowingly" for the crime of felonious assault, but argues that Count One of the indictment runs contrary to the Ohio Supreme Court's decision in State v. Colon ("Colon I "), 118 Ohio St.3d 26,2008-Ohio-1624, because it omits the mens rea element. Therefore, he claims, his conviction must be reversed for structural error.
 {¶ 19} Initially, we must reject Sandoval's broad reading of ColonI. In Colon I, the Supreme Court permitted a defendant to raise the issue of a defective indictment for the first time on appeal and concluded that the absence of a mens rea in the indictment, in conjunction with significant errors throughout the trial, warranted a reversal of the defendant's conviction for *Page 8 
structural error. Colon I at ¶ 28-32. Recently, however, the Supreme Court readdressed the issue in Colon I on a motion for reconsideration. See State v. Colon ("Colon II"), Slip Opinion No. 2008-Ohio-3749. The Court clarified that "when a defendant fails to object to an indictment that is defective because the indictment did not include an essential element of the charged offense, a plain-error analysis is appropriate." Id. at ¶ 7. "Applying structural-error analysis to a defective indictment is appropriate only in rare cases, such as Colon I, in which multiple errors at the trial follow the defective indictment." Id. at ¶ 8. As Sandoval's sole complaint is that Count One in his indictment did not specifically include the applicable mens rea, this does not constitute an instance of multiple errors having arisen at trial, and a structural error analysis does not apply. See id.
 {¶ 20} Crim. R. 52(B) permits a reviewing court to take notice of "[p]lain errors or defects affecting substantial rights" even if a party forfeits an error by failing to object to the error at trial. State v.Payne, 9th Dist. Nos. 2006-1245 2006-1383, 2007-Ohio-4642, at ¶ 15, quoting Crim. R. 52(B). To correct a plain error, all of the following elements must apply:
 "First, there must be an error, i.e., a deviation from the legal rule. * * * Second, the error must be plain. To be `plain' within the meaning of Crim. R. 52(B), an error must be an `obvious' defect in the trial proceedings. * * * Third, the error must have affected `substantial rights' [to the extent that it] * * * affected the outcome of the trial." State v. Barnes (2002), 94 Ohio St.3d 21, 27.
"Courts are to notice plain error `only to prevent a manifest miscarriage of justice.'" Payne at ¶ 16, quoting State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 21} R.C. 2903.02(B), the felony murder statute, provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." The felony murder statute does not contain a mens rea component. See R.C. 2903.02(B). Rather, a person commits felony *Page 9 
murder pursuant to R.C. 2903.02(B) by proximately causing another's death while possessing the mens rea element set forth in the underlying first or second degree felony offense of violence. In other words, the predicate offense contains the mens rea element of the felony murder.
 {¶ 22} R.C. 2903.11(A)(1), the felonious assault statute, constitutes an "offense of violence" and felony of the second degree. R.C. 2901.01(A)(9)(a); R.C. 2903.11(D)(1). A person commits felonious assault if he "knowingly * * * [c]ause[s] serious physical harm to another[.]" R.C. 2903.11(A)(1). Thus, if a person knowingly causes serious physical harm to another, and the other's death is the proximate result of that harm, that conduct will support a charge of felony murder pursuant to R.C. 2903.02(B).
 {¶ 23} Contrary to Sandoval's assertion, it was not necessary for the State to include the mens rea of "knowingly" in Count One of the indictment as well as in Count Two. Count Two of the indictment specifies that Sandoval "knowingly" committed felonious assault. Count One specifies that his felony murder charge rested upon his having committed felonious assault pursuant to R.C. 2903.11(A)(1). Thus, a reasonable person viewing the indictment would understand all of the essential elements of Count One and that a conviction for felony murder could only stand upon a finding that Sandoval knowingly caused Conti's death through his commission of the predicate offense of felonious assault. Compare Colon I, supra (involving a statute that did not explicitly set forth a mens rea, did not rely upon a predicate offense, and depended upon the default mens rea of "recklessly"). While it would not have been error for the State to also include the mens rea of "knowingly" in Count One, the omission of the same did not make the indictment defective. Consequently, Sandoval's second assignment of error lacks merit. *Page 10 
 III {¶ 24} Sandoval's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 Carr, P. J. Moore, J. concur. *Page 1