JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, James Johnson, appeals from his convictions in two separate cases that were consolidated for trial. In CR-487008, he was found guilty of four counts of aggravated robbery and three counts of kidnapping. The counts all contained firearm specifications. In CR-499363, a jury found him guilty of one count of conspiracy to commit aggravated robbery, with firearm specifications. In this appeal, which he limits solely to CR-499363, Johnson complains that the court erred by denying his Crim. R. 29(A) motion for judgment of acquittal on the conspiracy count and that the state's failure to state the culpable mental element for aggravated robbery in the indictment amounted to structural error.
 I {¶ 2} In his first assignment of error, Johnson maintains that the court erred by denying his Crim. R. 29(A) motion for judgment of acquittal because the state failed to meet its evidentiary requirement of showing that he committed a substantial act in furtherance of the conspiracy to commit aggravated robbery. He maintains that the state merely offered evidence of events that occurred after the attempt to commit aggravated robbery had been abandoned.
 {¶ 3} Crim. R. 29(A) states: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, *Page 4 
information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." The court can only enter a judgment of acquittal if the evidence is such that, after viewing it in a light most favorable to the state, reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus.
 {¶ 4} The state charged that Johnson engaged in a conspiracy to rob a gas station. R.C. 2923.01(A) states that no person, with purpose to commit, promote or facilitate an aggravated robbery, shall either (1) with another person or persons, plan or aid in planning the commission of any of the specified offenses or (2) agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses.
 {¶ 5} R.C. 2923.01(B) states:
 {¶ 6} "(B) No person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy. For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed." *Page 5 
 {¶ 7} An act is overt if it is "done outwardly, without attempt at concealment, and performed pursuant to and manifesting a specific intent or design." State v. Papp (1980), 68 Ohio App.2d 21, 23.
 {¶ 8} The state's evidence showed that a cashier for a gas station saw three or four men move past the window near her cash register at about 2 a.m. The men were wearing "humongous" sweatshirts, hoods, and gloves. It being toward the end of the month of June, the cashier immediately thought that the clothes worn by the men suggested that they were going to rob her. One of the men walked up to the door and activated the automatic door-opening mechanism.
 {¶ 9} At the same time, a police officer who had been patrolling the area in a car, saw the three males and noticed that they were wearing hooded sweatshirts. As he moved closer to the men, he saw that they had something covering their faces and were running toward the gas station. Thinking that they were about to rob the gas station, he pulled up to the front door and exited his car. He asked the three men for identification and all three put their hoods down and lowered their masks. The officer said that one of them, whom he later identified as Johnson, told him they did not have any identification. Seeing a black object in the waistband of Johnson's pants, the officer put his hand on his gun. At that point, all three men took off running: Johnson ran in one direction while the other two ran in the opposite direction. *Page 6 
 {¶ 10} The officer chased after the two men who ran off together and apprehended codefendant Antwon Slaughter. As a result of a conversation with Slaughter, the officer radioed police headquarters with the description of a car that the three men had used for transportation. The police soon located a car matching that description and stopped it. As they spoke to the driver, they noticed that his cell phone "was ringing pretty much non-stop" from a number identified with the name "Chunk." When the driver indicated a willingness to cooperate, the police allowed him to answer the cell phone as they stood near the receiver to monitor the call. The caller, whom the driver identified as Johnson, told the driver that "he was at home."
 {¶ 11} The driver of the car testified that he, Johnson, and two other men collectively came up with the idea of robbing a store for money. He said that on the night before the gas station robbery, they drove his car to an adult bookstore and, armed with a Tec-9 and shotgun, made off with about $800. The following night they saw the gas station. The driver parked his car on the side of the gas station and let the other three out. He said that they only carried the Tec-9 with them, and that the last time he saw the gun, Johnson had been holding it. He saw the police officer coming up the street and sounded his horn to warn them, but the officer had pulled up and starting questioning them. The driver then saw Johnson and the other two run away in separate directions, so he drove off. Johnson called the driver a short time later asking to be picked up. The driver *Page 7 
found Johnson and took him home. Johnson then said that he had dropped the gun and wanted to go back and find it. The driver went back on his own but was stopped by the police. He confirmed that Johnson repeatedly called his cell phone as the police detained him.
 {¶ 12} Tracing the route that Johnson took as he fled from the gas station, the police recovered the Tec-9, semi-automatic firearm.
 {¶ 13} Viewing this evidence in a light most favorable to the state, we find that reasonable minds could have found that Johnson took a substantial, overt step in furtherance of the aggravated robbery. He and his cohorts were dressed in hoodies and had covered their faces to avoid identification. They were armed and had a getaway car waiting. Johnson urgently wanted to retrieve the gun that he threw while fleeing because if found, the gun would cause the police to assume that "it was attempted robbery."
 {¶ 14} We reject Johnson's argument that these acts merely showed that he and his cohorts made a spontaneous decision to rob the store. This was not an impulsive crime — Johnson was armed, wearing a hood and mask, and had a getaway driver waiting. The evidence showed that he and the others had made the conscious decision some days before that they would commit robberies. They actually drove past the gas station once as they decided whether to commit the robbery. While they may not have decided on a specific target for a robbery until the last second, the evidence undeniably shows they had formed the necessary *Page 8 
intent to rob and took a substantial step by donning their disguises and attempting to enter the gas station.
 II {¶ 15} Johnson next argues, under authority of State v. Colon,118 Ohio St.3d 26, 2008-Ohio-1624, ("Colon I"), that the indictment for aggravated robbery omitted the mens rea element for the offense, thus constituting structural error requiring reversal of that charge.
 {¶ 16} Colon I held that the mens rea element of an offense is an essential part of a charge and that the omission of the mens rea element from an indictment constitutes structural error when the defects in the indictment permeate the trial to the point of questioning the reliability of the court's function for determining guilt or innocence. Id. at ¶ 23. In State v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749, ("Colon II"), the supreme court emphasized that its reversal inColon I had been premised on the following four factors: (1) the indictment did not charge the reckless mental element for robbery under R.C. 2911.01(A)(2); (2) the state did not attempt to prove the element of recklessness; (3) the trial court failed to instruct the jury on a mens rea element of recklessness; and (4) in closing arguments, the state treated robbery as a strict liability offense. Id. at ¶ 6, citingColon I, 118 Ohio St.3d at ¶ 31.
 {¶ 17} Colon has no application to this case because the state charged Johnson with conspiracy to commit aggravated robbery. In State v.Salaam, *Page 9 
Hamilton App. No. C-070413, 2008-Ohio-4982, the First District Court of Appeals addressed this same issue and stated:
 {¶ 18} "In State v. Childs [88 Ohio St.3d 558, 2000-Ohio-425], the foundational decision for the holding in Colon I regarding the constitutional requirements of an indictment, the defendant was charged with conspiracy relating to drug trafficking. But the indictment that charged the conspiracy count did not name the drug that was the object of the conspiracy. After discussing the constitutional requirements of an indictment — later quoted by the Colon I majority — theChilds court concluded that `[w]here the offense at issue is charged as a conspiracy, it is well established that it is the elements of the conspiracy that must be provided: Conspiring to commit a crime is an offense wholly separate from the crime, which is the object of the conspiracy. Thus, we have consistently held that a conspiracy charge need not include the elements of the substantive offense the defendant may have conspired to commit.'
 {¶ 19} "The court later amplified its position in State v.Buehner [110 Ohio St.3d 403, 2006-Ohio-707], stating that, in the context of ethnic intimidation, `it is the predicate offense itself and not the elements of the predicate offense that is an essential element of the charged offense.' In Buehner, the court noted that it had `previously rejected the argument that an indictment is defective for the state's failure to identify the elements of the underlying offense of the charged crime.' The Buehner court held that `[a]n indictment that tracks the language of *Page 10 
the charged offense and identifies a predicate offense by reference to the statute number need not also include each element of the predicate offense in the indictment." Id. at ¶ 27-28 (citational footnotes omitted).
 {¶ 20} The indictment returned against Johnson tracked the language of the charged offense of conspiracy and identified the predicate offense of aggravated robbery by its correct statute number: R.C. 2911.01(A)(1). It therefore conformed in all respects to applicable precedent and was not defective.[1] The assigned errors are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 11 
SEAN C. GALLAGER, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.
[1] Even if we were to reach the substantive issue raised underColon I and II, we note that this court has held, consistent withState v. Wharf (1999), 86 Ohio St.3d 375, 1999-Ohio-112, that aggravated robbery as charged under R.C. 2911.01(A)(1) is a strict liability offense and the state does not err by failing to charge the mental element. See State v. Wade, Cuyahoga App. No. 90145, 2008-Ohio-4870;State v. Brisco, Cuyahoga App. No. 89979, 2008-Ohio-6276. *Page 1