DECISION. *Page 2 
{¶ 1} Following a jury trial, defendant-appellant Judson Nesbitt was found guilty of felony murder and felonious assault relating to the death of Lawanda Brown. The jury was unable to reach a verdict on an additional charge of murder, and that charge was dismissed. Nesbitt received an aggregate sentence of 23 years to life imprisonment.
 {¶ 2} Nesbitt now appeals. He argues in six assignments of error that the trial court erred by failing to instruct the jury on lesser-included and inferior offenses; that the trial court erred in overruling his motion for a judgment of acquittal; that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence; that the trial court erred in imposing consecutive sentences because his convictions involved allied offenses of similar import; and that his felony-murder conviction must be vacated because his indictment was void.
 {¶ 3} For the following reasons, the judgment of the trial court is affirmed.
 Factual Background {¶ 4} Nesbitt was convicted of felony murder and felonious assault for the death of his girlfriend, Lawanda Brown. The following evidence was presented at trial.
 {¶ 5} Willie Jones testified that he lived in an apartment in Lincoln Terrace, in an area of Cincinnati known as Walnut Hills. His apartment was located directly above Lawanda Brown's. According to Jones, in the early morning hours of May 24, 2007, he had heard an argument between Nesbitt and Brown. Jones overheard *Page 3 
furniture moving and heard Brown scream, "Get out of my house." Jones testified that he had worked with Brown, and that she had failed to show up for work that day. When Brown still failed to appear at work the following day, Jones instructed his wife to call the police.
 {¶ 6} Cincinnati Police Officer Marcus McNeil testified that, on May 25, 2007, he had been dispatched to Lincoln Terrace in response to the call concerning Lawanda Brown. Officer McNeil entered Brown's apartment through a shut, but unlocked, back door. He discovered Brown deceased, lying underneath a blanket on her bed.
 {¶ 7} Detective Jennifer Mitsch, with the Cincinnati Police Department's homicide unit, interviewed Nesbitt after he had voluntarily gone to the police station, and she testified about the statement that Nesbitt had provided. According to Detective Mitsch, Nesbitt revealed that he and Brown had been out drinking the night before Brown's murder. They got into an argument upon arriving home because Brown had accused Nesbitt of wanting to purchase drugs. Nesbitt told Detective Mitsch that Brown had attacked him with a skillet and had struck him in the head. Detective Mitsch testified that she had seen an injury above Nesbitt's eye where he alleged that he had been struck by the skillet. According to Mitsch, Nesbitt further stated that Brown had attempted to hit him with the skillet a second time, and that he had slapped her twice with an open fist.
 {¶ 8} Mitsch stated that although Nesbitt had steadily maintained that he had only struck Brown twice, the rest of his story was rife with inconsistencies. For example, Nesbitt first stated that Brown had fallen on the bed after he had slapped her. But he later stated that she had fallen onto the floor, and that he had then *Page 4 
picked her up and placed her on the bed. The entire tape of Mitsch's interview of Nesbitt was played for the jury.
 {¶ 9} During this interview, Nesbitt stated that he had left Brown's apartment after he had slapped her and after she had told him to get out. He returned several hours later and found Brown sleeping on her bed. Brown's face was very swollen. Nesbitt stated that he had taken off Brown's clothing and placed her on her side because he did not want her to asphyxiate while she was passed out. He then got in the bed and slept next to her. According to Nesbitt, Brown was breathing, but still sleeping, when he left that morning. He called her repeatedly that day, but she never answered. The following day, May 25, he returned to the apartment and found Brown deceased.
 {¶ 10} Gary Utz, a forensic pathologist with the Hamilton County Coroner's office, conducted an autopsy on Brown. Utz testified that Brown had suffered bruising on various areas of her body. The bruising on the right side of her face was caused by a blunt impact to the side of the head and was not consistent with an injury from a slap. Additionally, Brown's inner cheek had been lacerated by her teeth. According to Utz, Brown had been struck no fewer than four times and had died as the result of subdural hemorrhaging. On cross-examination, Utz stated that Brown had a blood-alcohol content of .144. He further stated that the location of Brown's injuries indicated that she had been beaten, as opposed to having been injured during a fall.
 Sufficiency, Weight, and Rule 29 {¶ 11} In his second, third, and fourth assignments of error, Nesbitt argues that his convictions were not supported by sufficient evidence, that his convictions *Page 5 
were against the manifest weight of the evidence, and that the trial court erred in overruling his motion for a judgment of acquittal. We address these assignments together.
 {¶ 12} When reviewing the sufficiency of the evidence, we must determine "whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt."[1] We are not permitted to weigh the evidence when reviewing its sufficiency.[2] We apply the same standard of review to determine whether a trial court erred in denying a defendant's Crim. R. 29 motion for an acquittal.[3]
 {¶ 13} But when reviewing the manifest weight of the evidence, we must review the entire record, weigh the evidence, and determine whether the jury lost its way and created a manifest miscarriage of justice.[4]
 {¶ 14} As we have stated, Nesbitt was found guilty of felony murder and felonious assault. Felony murder is proscribed by R.C. 2903.02(B), which provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." In this case, Nesbitt was found guilty of causing Brown's death while committing felonious assault under R.C. 2903.11(A)(1). This statute provides that "[n]o person shall knowingly * * * cause serious physical harm to another." *Page 6 
 {¶ 15} The evidence presented at trial established that Brown had died after suffering subdural hemorrhaging caused by a severe beating. She had suffered numerous additional injuries to her body. The evidence further established that Nesbitt had admitted to arguing with Brown and slapping her, grabbing her wrists, and forcing her onto the bed. And Nesbitt had additionally acknowledged that his actions could have caused Brown to fall onto the floor, rather than the bed.
 {¶ 16} From this evidence, the jury could reasonably have found that Nesbitt had caused serious physical harm to Brown that had resulted in her death. And given the severity of the injuries that Brown had suffered, i.e. death, the jury could reasonably have inferred that Nesbitt had acted knowingly. We conclude that Nesbitt's convictions for felony murder and felonious assault were supported by sufficient evidence, and that the trial court did not err in denying his motions for acquittal with respect to these offenses.
 {¶ 17} We further conclude that the jury did not lose its way and create a manifest miscarriage of justice. Nesbitt's statement that he had only slapped Brown twice was not consistent with the severity of the injuries that Brown had suffered. The jury was entitled to reject Nesbitt's version of events, and his convictions were not against the manifest weight of the evidence.
 {¶ 18} The second, third, and fourth assignments of error are overruled.
 Jury Instructions {¶ 19} In his first assignment of error, Nesbitt argues that the trial court erred in failing to instruct the jury on the offenses of voluntary manslaughter, involuntary manslaughter, and assault. Nesbitt had requested that the jury be instructed on each of these offenses, but the trial court declined to provide such instructions. *Page 7 
 {¶ 20} Voluntary manslaughter is an inferior degree of murder.[5]
And involuntary manslaughter is a lesser-included offense of murder.[6] An instruction on a lesser-included offense is appropriate "where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."[7] The same test is applied when determining whether an instruction should be given for an inferior-degree offense.[8]
 {¶ 21} Consequently, when a defendant is charged with murder, an instruction on voluntary manslaughter is appropriate when "the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter."[9]
 {¶ 22} Voluntary manslaughter is proscribed by R.C. 2903.03(A), which provides that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another." Nesbitt argues that the evidence presented at trial demonstrated that he had been provoked into slapping Brown after she had struck him in the face with a skillet. Not so.
 {¶ 23} In his statement to the police, Nesbitt claimed that he had been afraid of Brown because she had stabbed him in the past. He stated that he was fearful that she would stab him again, and that was the reason why he had slapped her and then left her apartment after their physical altercation. At best, this testimony could have established that Nesbitt had acted out of fear, not while under the influence of a *Page 8 
passionate fit of rage. And as the Ohio Supreme Court has noted, "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage."[10]
 {¶ 24} The evidence presented at trial did not demonstrate that Nesbitt had acted while under a sudden passion or fit of rage, and accordingly, did not support an acquittal on the charge of felony murder and a conviction for voluntary manslaughter. The trial court appropriately declined to instruct the jury on the offense of voluntary manslaughter.
 {¶ 25} Nesbitt next argues that the trial court erred by failing to instruct the jury on the lesser-included offense of involuntary manslaughter. R.C. 2903.04(B) proscribes involuntary manslaughter, stating that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor." Nesbitt offers assault as the predicate misdemeanor offense for the alleged involuntary manslaughter. Assault is proscribed by R.C. 2903.13, which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another."
 {¶ 26} As we have stated, Nesbitt had been convicted of felony murder and of felonious assault as the predicate felony offense to the murder conviction. As felonious assault involves the causing of serious physical harm to another, [11] the distinguishing factor between felonious assault and assault is the causation of serious physical harm.
 {¶ 27} The evidence presented in this case established that Nesbitt's actions had caused the death of Brown. Brown additionally suffered serious bruising and *Page 9 
other injuries to her person. Clearly, Nesbitt had inflicted serious physical harm. The evidence presented would not have supported an acquittal on the offenses of felony murder and felonious assault and convictions for the offenses of involuntary manslaughter and assault. The trial court appropriately declined to instruct the jury on these offenses.
 {¶ 28} The first assignment of error is overruled.
 Allied Offenses {¶ 29} In his fifth assignment of error, Nesbitt argues that the trial court erred in imposing consecutive sentences for felony murder and felonious assault because they are allied offenses of similar import. According to Nesbitt, the commission of felony murder necessarily results in the commission of felonious assault. He further posits that each crime in this case was committed with the same animus.
 {¶ 30} The Ohio Supreme Court has explained the process to be utilized when determining whether offenses are allied offenses of similar import. To make such a determination, courts must "compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import."[12] *Page 10 
 {¶ 31} Relying on this guidance from the Ohio Supreme Court, we have already determined that felony murder and felonious assault are not allied offenses of similar import. In State v. Finley, this court concluded that "felony murder under R.C. 2903.02(B) requires causing death while committing an offense of violence, while felonious assault requires knowingly causing serious physical harm to another. Comparing the elements of these offenses in the abstract, one can commit a felony murder without committing felonious assault, and vice versa. Clearly, the commission of felonious assault will not necessarily result in a felony murder. Therefore, felony murder and felonious assault are not allied offenses of similar import."[13]
 {¶ 32} Our conclusion further comports with the Ohio Supreme Court's decision in State v. Brown.[14] In Brown, the court held that, when determining whether two offenses are allied offenses of similar import, courts must consider the legislative intent behind the statutes at issue.[15] In Brown, the court had determined that two counts of felonious assault under R.C. 2903.12(A)(1) and (A)(2) were allied offenses of similar import because both offenses served the same purpose, to prevent physical harm to persons.[16] Unlike the statutory provisions at issue in Brown, the legislature has manifested different intents with respect to felony murder and felonious assault. While the felonious assault statute was designed to prevent physical harm to persons, the felony-murder statute was designed to protect human life.[17] *Page 11 
 {¶ 33} Felony murder and felonious assault are not allied offenses of similar import, and the trial court properly imposed consecutive sentences. Nesbitt's fifth assignment of error is overruled.
 Indictment not Void {¶ 34} In his sixth assignment of error, Nesbitt argues that his felony-murder conviction must be vacated because his indictment was void.
 {¶ 35} Nesbitt's indictment for felony murder provided, "The Grand Jurors of the County of Hamilton * * * do find and present that JUDSON NESBITT * * * caused the death of LAWANDA BROWN as a proximate result of the defendant committing or attempting to commit an offense of violence, to wit: FELONIOUS ASSAULT, which is a felony of the Second Degree * * * in violation of Section 2903.02(B) of the Ohio Revised Code."
 {¶ 36} Nesbitt was further indicted for felonious assault. That indictment read as follows: "The Grand Jurors of the County of Hamilton * * * do find and present that JUDSON NESBITT * * * knowingly caused serious physical harm to LAWANDA BROWN, in violation of Section 2903.11(A)(1) of the Ohio Revised Code."
 {¶ 37} Nesbitt argues that, under the Ohio Supreme Court's decision inState v. Colon, [18] his felony-murder indictment was void because it did not contain a mens rea element. In Colon, the court held that an indictment for robbery that failed to contain a mens rea element was defective and resulted in a structural error.[19] But the court reconsidered its decision in Colon II.[20] In Colon II, the court noted that the *Page 12 
factual background of Colon I was unique, and that a structural-error analysis would not typically be appropriate in a case involving a defective indictment.[21] Rather, it concluded that a plain-error analysis should generally be applied to defective-indictment cases.[22]
 {¶ 38} Nesbitt's argument is misplaced, as his indictment was not defective and the holdings in Colon I and Colon II have not been implicated. Nesbitt was indicted for the offense of felony murder. The mens rea for felony murder is found in its predicate offense, which in this case was felonious assault.[23]
 {¶ 39} Nesbitt's indictment for felony murder referred to the felonious-assault statute. And Nesbitt's separate indictment for felonious assault stated that he had "knowingly caused serious physical harm to Lawanda Brown." The indictment not only contained the mens rea necessary for the offense, but also contained both the language and the numerical designation of the felonious-assault statute.
 {¶ 40} As the Ohio Supreme Court has made clear, "[t]he purposes of an indictment are to give an accused adequate notice of the charge, and enable an accused to protect himself or herself from any future prosecutions for the same incident."[24]
 {¶ 41} Nesbitt's indictments for felonious assault and felony murder gave him adequate notice of the charges against him. He was aware that the state had charged him with acting knowingly. Because Nesbitt's indictment for felony murder was not defective, we need not undertake a structural or a plain-error analysis. *Page 13 
 {¶ 42} The Ninth Appellate District has reached the same conclusion inState v. Sandoval.[25] The defendant in Sandoval had also been indicted for felony murder and felonious assault and had alleged on appeal that his indictment for felony murder was defective because it lacked a mens rea element. Similar to Nesbitt, Sandoval's indictment for felonious assault alleged that he had acted knowingly.
 {¶ 43} The Ninth Appellate District rejected Sandoval's challenge to the indictment, stating that "[c]ontrary to Sandoval's assertion, it was not necessary for the State to include the mens rea of `knowingly' in Count One of the indictment as well as in Count Two. Count Two of the indictment specifies that Sandoval `knowingly' committed felonious assault. Count One specifies that his felony murder charge rested upon his having committed felonious assault pursuant to R.C. 2903.11(A)(1). Thus, a reasonable person viewing the indictment would understand all of the essential elements of Count One and that a conviction for felony murder could only stand upon a finding that Sandoval knowingly caused Conti's death through his commission of the predicate offense of felonious assault."
 {¶ 44} In this case, the state's reference to the felonious-assault statute in the felony-murder indictment, coupled with the inclusion of the mens rea for felonious assault in that indictment, provided more than adequate information for Nesbitt to understand the essential elements of the crimes that he had been charged with.
 {¶ 45} Nesbitt's indictment was not defective, and the sixth assignment of error is overruled.
 {¶ 46} Consequently, the judgment of the trial court is affirmed.
Judgment affirmed. *Page 14 
 CUNNINGHAM and DINKELACKER, JJ., concur.
[1] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[2] Id.
[3] State v. Jordan, 167 Ohio App.3d 157, 2006-Ohio-2759,854 N.E.2d 520, ¶ 49.
[4] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[5] State v. Levett, 1st Dist. No. C-040537, 2006-Ohio-2222, ¶ 24.
[6] State v. Lynch, 98 Ohio St.3d 514, 2003-Ohio-2284,787 N.E.2d 1185, ¶ 79.
[7] State v. Thomas (1988), 40 Ohio St.3d 213, 216,533 N.E.2d 286.
[8] State v. Shane (1992), 63 Ohio St.3d 630, 632,590 N.E.2d 272.
[9] Id., citing State v. Tyler (1990), 50 Ohio St.3d 24, 37,553 N.E.2d 576.
[10] State v. Mack, 82 Ohio St.3d 198, 201, 1998-Ohio-375,694 N.E.2d 1328.
[11] See R.C. 2903.11(A)(1).
[12] State v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625,886 N.E.2d 181, paragraph one of the syllabus.
[13] State v. Finley, 1st Dist. No. C-061052, 2008-Ohio-4904, ¶ 42.
[14] State v. Brown, 119 Ohio St.3d 447, 2008-Ohio-4569,895 N.E.2d 149.
[15] Id. at ¶ 37.
[16] Id. at ¶ 2.
[17] Id. at ¶ 35, citing Whalen v. United States (1980), 445 U.S. 684,713, 100 S.Ct. 1432 (Rehnquist, J. dissenting).
[18] State v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624,885 N.E.2d 917.
[19] Id at ¶ 19.
[20] State v. Colon, 119 Ohio St.3d 204, 2008-Ohio-3749,893 N.E.2d 169.
[21] Id. at ¶ 6-7.
[22] Id. at ¶ 8.
[23] See State v. Salaam, 1st Dist. Nos. C-070385 and C-070413, 2008-Ohio-4982, ¶ 16.
[24] State v. Buehner, 110 Ohio St.3d 403, 2006-Ohio-4707,853 N.E.2d 1162, ¶ 7.
[25] State v. Sandoval, 9th Dist. No. 07CA009276, 2008-Ohio-4402. *Page 1